IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JOSEPH E. WHITLOCK, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-1409 (PTG/WBP) |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the parties' Cross-Motions for Partial Summary Judgment and Defendant's Motion to Dismiss the Privacy Act Claim in the Amended Complaint. Dkts. 28, 36-37. Plaintiff Joseph E. Whitlock brings a claim under the Administrative Procedure Act ("APA"). Essentially, he challenges the Secretary of the Army's decision to overturn the recommendation of the Army Board of Correction of Military Records ("ABCMR") to expunge domestic violence allegations from Plaintiff's military records. Dkt. 7 ("Am. Compl."). Additionally, Plaintiff brings a Privacy Act claim against the United States ("Defendant" or "the Government") on the basis that the Government allegedly "contacted the news media" to report on his records. *Id.* ¶¶ 48-54.

In his motion, Plaintiff seeks partial summary judgment on the APA claim, contending that the Secretary of the Army improperly interjected his personal opinion in his final decision, despite being bound by the ABCMR's recommendation under agency regulations. Dkt. 29 at 13. Conversely, Defendant seeks summary judgment on the APA claim on the basis that the Secretary of the Army bears final decision-making authority under Army Regulations, and that the Court must grant its usual deference to military judgments here. Dkt. 38 at 1-4. Defendant additionally

seeks to dismiss the Privacy Act claim because the statute of limitations lapsed. *Id.* at 28. For the reasons that follow, the Court upholds the Secretary of the Army's final decision and dismisses the Privacy Act claim. Accordingly, Defendant's Motion for Summary Judgment on the APA claim and Motion to Dismiss the Privacy Act claim are granted.

### Factual Background[1]

Plaintiff served in the military for 34 years before being discharged under honorable conditions on December 30, 2020. Administrative Record ("AR")[2] 00016. In December 2019, the Army Criminal Investigation Division ("Army CID") launched an investigation into Plaintiff upon receiving a tip that Plaintiff had physically assaulted his partner, Margaret D'Annunzio. AR 00056-57. The tip had come from General Austin Miller, an active-duty Army soldier whose ex-wife, Mimi Miller, claimed that Ms. D'Annunzio had confided in her about Plaintiff's alleged domestic violence in 2018 and then 2019 ("2018 and 2019 Incidents"). AR 00026, 00056-57.

On January 3, 2020, the Commanding Officer in the Military District of Washington ("MDW") issued a military protective order ("MPO") barring Plaintiff from contact with Ms. D'Annunzio for ten days and directing him to vacate their shared home. AR 00010; Dkt. 28-2 at 26. Ms. D'Annunzio subsequently recanted her statements regarding Plaintiff's alleged domestic violence. AR 00010. When interviewed by Army CID, she stated that she was upset about Plaintiff's removal from the home, Plaintiff "had never abused her in any way," she had "lied" in text messages with her friends about the abuse allegations, and she would release medical records related to her injuries she allegedly received from Plaintiff. AR 00059-60. Throughout January

---

[1] The facts recited here are undisputed and supported by the administrative record of the proceedings before the ABCMR. Dkt. 27.

[2] The Court uses the citation "AR" to refer to the administrative record (Dkt. 27) and the pagination used in the administrative record.

2020, Ms. D'Annunzio continued to ask Army CID to lift the MPO and expressed concerns about her own security clearance. AR 00072. On January 26, 2020, she provided a sworn affidavit stating "she had not at any time been a victim of any form of abuse or violence at the hands of . . . Whitlock," with attached medical reports of her injuries. AR 00079.

After the MDW Commander issued a second 180-day MPO barring contact between Plaintiff and Ms. D'Annunzio in February 2020, Ms. D'Annunzio filed for a preliminary injunction and temporary restraining order in this District to enjoin the Army from enforcing the MPO. AR 00096. Judge Anthony J. Trenga partially granted the motion on April 21, 2020. *See D'Annunzio v. United States*, No. 1:20-cv-379, Dkt. 19 (E.D. Va. Apr. 21, 2020). While Judge Trenga found the issuance of the MPO was "reasonable" in order to protect Ms. D'Annunzio from possible abuse, he held that a total ban was excessive and required the Army to provide periodic, monitored contacts. *Id.*; AR 00110-11.

### *Army Investigation and Title 32 Hearing*

In parallel, in early 2020, Army CID investigated Ms. D'Annunzio's allegations of the 2018 and 2019 Incidents. AR 00051. The investigation uncovered two prior incidents between Plaintiff and Ms. D'Annunzio. First, in October 2016, the Stafford County Sheriff's Office ("SCSO") responded to an instance where Plaintiff and Ms. D'Annunzio got into an argument, during which Plaintiff began poking her and threw a cup of tea against the wall ("2016 Incident"). AR 00069. Then, in August 2017, the SCSO again responded to an incident of Plaintiff and Ms. D'Annunzio in a verbal fight while intoxicated, during which Plaintiff had to be handcuffed, though the officer observed no physical violence ("2017 Incident"). AR 00069-70. Neither incident resulted in an arrest, citation, or charge for criminal conduct. Dkt. 29 ¶ 18; Dkt. 38 ¶ 18.

3

On March 9, 2020, Army CID produced the final law enforcement report ("LER") with Plaintiff as the subject, listing the allegations and titling Plaintiff with Uniform Code of Military Justice ("UCMJ") Article 128, Aggravated Assault and UCMJ Article 128b, Domestic Violence.[3] AR 00051 (citing final report).

On May 21, 2020, Plaintiff attended a hearing under UMCJ Article 32 for several past charges, including the 2016 Incident and 2017 Incident. Dkt. 29 ¶ 23; AR 00113; *see also* 10 U.S.C. § 832 Art. 32 ("[A] preliminary hearing shall be held before referral of charges and specifications for trial by general court-martial.").[4] On the uncharged conduct in the 2018 and 2019 Incidents, the hearing officer found no probable cause given Ms. D'Annunzio's "false accusations." AR 00113-120. On the past charges, the hearing officer recommended that all but

---

[3] "Titling" and "indexing" are "administrative procedures" that consist of "placing the name and identifying information of a person, corporation, or other legal entity in the title block of a Department of Defense Law Enforcement Activity ('DoD LEA') report." Dkt. 38 at 3 (quoting Department of Defense Instruction ("DoDI") 5505.07 § G.2 (Aug. 8, 2023)). Upon titling, the LEA "indexes" the information by submitting it to the Defense Central Index of Investigations ("DCII"), an "automated central index that identifies both investigations conducted by DoD LEAs, and personnel security determinations made by DoD adjudicative authorities." *Id.* The DCII "is limited to DoD and other Federal agencies that have adjudicative, investigative, or counterintelligence missions. *Id.* The titling and indexing process occurs "as soon as there is credible information that [an individual] committed a criminal offense," meaning information that "considering the source and nature of the information and the totality of the circumstances, is sufficiently believable to lead a trained DoD LEA person to presume the fact or facts in question are true." *Id.* at 5. The information in LEA or DCII reports remains even if the individual is found not guilty, "unless the relevant expungement official grants expungement." *Id.* (citing DoDI 5505.07 §§ 1.2(e), 3.1).

[4] The hearing is described as the "military equivalent of a civilian grand jury proceeding." Dkt. 38 ¶ 36 (citing The Judge Advocate General's Legal Ctr. & Sch., Criminal Law Deskbook (last updated May 11, 2022)). It assesses "whether each specification alleges an offense; whether there is probable cause to believe that the accused committed the offense or offenses charged; whether the convening authority has court-martial jurisdiction over the accused and over the offense; and to recommend the disposition that should be made of the case." Rules for Court Martial § 405(a). The hearing officer "may examine witnesses and hear evidence" in connection with the uncharged conduct, so long as the accused has "the same opportunity for representation, cross-examination, and presentation afforded during the preliminary hearing of an uncharged offense." *Id.* § 405(e)(2).

two of the charges "be disposed of via administrative measures." *Id.* The Commander nevertheless dismissed all the charges on June 9, 2020. AR 00012. In July 2020, Plaintiff's commanding officer issued verbal counseling rather than court martial charges. AR 00049.

### Procedural History

On October 8, 2020, Plaintiff filed a petition with the Army to remove his name from the title and subject block of the final LER about his uncharged conduct. AR 00036-39. In February 2021, Army CID denied the petition "after careful review of [his] request and the evidence available," applying the then-current standard for expungement under Department of Defense Instruction ("DoDI") 5507.7 and Army Reg. 195-2. AR 00091 (citing the pre-2023 standard for granting expungement requests where "credible information did not exist to believe that the individual committed the offenses for which titled as a subject at the time the investigation was initiated"); *see also* DoDI 5505.07 § 3.2(a) (2023) (setting new standard, per the National Defense Authorization Act for FY 2021, that an expungement official may consider whether probable cause existed, at the time of titling and the time of the expungement request, to demonstrate (1) the individual committed the offense or (2) the offense itself occurred). In December 2021, Plaintiff subsequently appealed to the ABCMR, arguing that the basis of his charges—"second-hand hearsay social media and text message statements"—were not credible, especially in light of Ms. D'Annunzio's sworn affidavit recanting the statements. AR 00023, 00030, 00041.

The ABCMR unanimously recommended that the "evidence presented is sufficient to warrant a recommendation for relief" because "[Plaintiff] was investigated on statements that were quickly retracted, and the retraction of the statements eliminated probable cause to believe [Plaintiff] committed the offense for which he was listed as a subject" in the LER. AR 00016-17. The Board thus recommended that the records "be corrected by removing his name from the title

block of [the final LER] . . . with expungement of his name from the DCII, CID databases, and all other federal agency criminal databases." *Id.* The Secretary of the Army, through the Deputy Assistant Secretary of the Army, Review Boards ("DASA-RB"), subsequently overturned the Board's recommendation and denied Plaintiff's request. AR 00007. The decision reasoned that because "the evidence show[ed] the recanted statements relate to a single offense, when the applicant had multiple offenses for the same misconduct, I find probable cause still exists that the applicant was involved in the misconduct leading to his titling." *Id.*

On April 2, 2024, Plaintiff filed a Complaint in the U.S. District Court for the Eastern District of Pennsylvania against the Government and individual defendants in the Department of Defense. Dkt. 1. On June 25, 2024, Plaintiff filed an Amended Complaint against the Government under the APA for the DASA-RB's decision overturning the Board.[5] Am. Compl., Dkt. 7, ¶¶ 2, 9; *see also* 5 U.S.C. § 706 (APA). Plaintiff additionally filed a claim under the Privacy Act, citing a June 11, 2020 *Army Times* article about him and alleging that the Government "contacted the news media to report on the dismissal of" Ms. D'Annunzio's allegations and "provided personal details and facts" available only through the proceedings or Defendant's records. Am. Compl. ¶¶ 48-54, 71-73; *see also* 5 U.S.C. § 552a. On August 12, 2024, the U.S. District Court for the Eastern District of Pennsylvania, upon the Government's motion, transferred the case to this Court. Dkts. 12, 14.

On October 21, 2024, this Court excused the Government from filing an answer under Rule 8 and directed the parties to follow a briefing schedule for summary judgment. Dkt. 26. On December 20, 2024, Plaintiff filed a Motion for Partial Summary Judgment (Dkt. 28) arguing that the DASA-RB's decision ran contrary to the APA. Dkt. 29. On January 24, 2025, the Government

---

[5] That court subsequently dismissed the individual defendants. Dkt. 9.

filed a Motion for Partial Summary Judgment (Dkt. 36) on Plaintiff's APA claim and a Motion to Dismiss (Dkt. 37) Plaintiff's Privacy Act claim. *See* Dkt. 38. Subsequently, the Court heard argument on the motions and took this case under advisement. It is ripe for disposition.

### Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Generally, to survive a Rule 56 motion for summary judgment, a party must go beyond the pleadings and cite to its own affidavits, depositions, answers to interrogatories, and/or admissions on file to show that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "However, '[i]n a case involving review of a final agency action under the [APA] ... the standard set forth in Rule 56(c) does not apply because of the limited role of a court reviewing that administrative record." *Thompson v. United States*, 119 F. Supp. 3d 462, 467 (E.D. Va. 2015) (alterations and omission in original) (quoting *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006)). Because the APA "confines judicial review of executive branch decisions to the administrative record of proceedings before the pertinent agency . . . there can be no genuine issue of material fact in an APA action." *Shipbuilders Council of Am. v. U.S. Dep't of Homeland Sec.*, 770 F. Supp. 2d 793, 802 (E.D. Va. 2011) (citations omitted).

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[A] court is not required 'to accept as true a legal conclusion couched as a factual allegation,' or a legal

conclusion unsupported by factual allegations." *Taylor v. First Premier Bank*, 841 F. Supp. 2d 931, 933 (E.D. Va. 2012) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986); and then citing *Iqbal*, 556 U.S. at 680-82). A court may "consider documents that are explicitly incorporated into the complaint by reference . . . and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citation omitted). A court may also consider an attachment to a motion to dismiss if "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (citation omitted).

**Discussion**

The Court first addresses the parties' Cross-Motions for Summary Judgment and then Defendant's Motion to Dismiss.

**I.    Cross-Motions for Summary Judgment on the APA Claim**

As to the APA claim, the parties raise three issues for the Court to resolve. First, the Court must address whether Plaintiff has adequately established that the administrative record is incomplete. Second, the Court must resolve whether the ABCMR recommendation is binding on the Secretary of the Army. Finally, the Court must determine whether—in light of the DASA-RB's statutory and regulatory authority, the appropriate standard of deference, and the stated reasoning—the DASA-RB's final decision was improper, contrary to the evidence, an abuse of discretion, and arbitrary and capricious under the APA.[6]

---

[6] While Plaintiff additionally raises a due process violation in his Reply brief—claiming that the titling process generally violates his due process rights—he raised no such claim in his Amended Complaint. Dkt. 41 at 4-6. The Court "need not consider 'new allegations or new facts' that were available to the plaintiff when it filed the complaint, but were only introduced 'in an opposition to a defendant's motion to dismiss.'" *Fuller v. Hade*, No. 1:22-cv-218, 2023 WL 2277101, at *6 (E.D. Va. Feb. 28, 2023) (quoting *Hooker v. Disbrow*, No. 1:16-cv-1588, 2017 WL 1377696, at

8

***Administrative Record***

Plaintiff argues that Defendant did not provide this Court with the complete administrative record. Dkt. 29 at 9. First, Plaintiff points to records of text messages from Ms. D'Annunzio to Ms. Miller that "have never been provided to Plaintiff." *Id.* (referring to AR 00128-252). Second, Plaintiff asserts that "the administrative record is heavily redacted, and withholds significant information as to the facts upon which Defendant's decisions were or should have been based." *Id.* Finally, Plaintiff contends that Defendant withheld records upon which the Government decided his petition, including (a) evidence of Ms. D'Annunzio recanting her accusations; (b) records of the two MPOs; (c) Army CID's internal investigation into his non-criminal law enforcement interactions; (d) the Commander's decision to dismiss charges; and (e) the verbal counseling notice Plaintiff received following the investigation. Dkt. 29 at 5-8 ("Statement of Disputed Facts"); *see also* Dkt. 28-2 (Ex. A) (attaching the allegedly missing records).

In response, Defendant contends that Plaintiff waived this argument when he failed to raise it before the ABCMR. Dkt. 38 at 22-23. On the merits, Defendant argues that "the ABCMR has no duty to compile an administrative record." *Id.* at 23. Further, per Defendant, Plaintiff does not show how the redactions, which are limited to names, may help his case. *Id.* at 23-24. Finally, Defendant contends that the text messages between Ms. D'Annunzio and others were referenced in the Government's decision and, therefore, are part of the record. *Id.*

The APA requires that judicial review of an agency action is limited to the whole administrative record before the agency.[7] *See* 5 U.S.C. § 706; *Ergon-W. Va., Inc. v. EPA*, 980 F.3d

---

*4 (E.D. Va. Apr. 13, 2017)); Dkt. 42 at 7-8. Accordingly, the Court does not reach the merits of that claim.

[7] Because the APA mandates a whole administrative record to aid this Court's review of the agency's decision-making process, it is irrelevant that Plaintiff did not raise the incomplete

403, 410 (4th Cir. 2020) (stating that, in its "evaluation of the agency action" the court "'shall review the whole record or those parts of it cited by a party' . . . ."). A complete administrative record must include all materials "referred to, considered by, or used by [the agency]," both "directly or *indirectly* . . . includ[ing] evidence contrary to the agency's position." *Tafas v. Dudas*, 530 F. Supp. 2d 786, 793-94 (E.D. Va. 2008) (first quoting *Ad Hoc Metals Coal. v. Whitman*, 227 F. Supp. 2d 134, 139 (D.D.C. 2002); and then quoting *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989)). Because Plaintiff challenges the DASA-RB's decision here, the relevant inquiry is whether the administrative record before this Court includes all materials directly or indirectly considered by the DASA-RB during its decision-making process.

To establish an incomplete record in an APA claim, Plaintiff must overcome the "presumption of regularity," which assumes "public officers have properly discharged their official duties" or, in this case, that the agency "properly designated the administrative record." *Id.* at 794. Generally, a party can overcome that presumption with a "strong, substantial, or prima facie showing that the record is incomplete." *Id.* (quoting *Amfac Resorts, LLC v. Dep't of Interior*, 143 F. Supp. 2d 7, 11 (D.D.C. 2001)) (internal quotations omitted).

First, the Court agrees with Plaintiff that the screenshots of text messages between Ms. Miller and Ms. D'Annunzio cannot be properly considered by this Court. *See* AR 00128-252 (text messages). At the hearing and in their briefing, neither party could definitively confirm whether those screenshots were explicitly considered by the DASA-RB and the ABCMR in their decision-making. Nor are the screenshots included in the list of "supporting documents" considered in the ABCMR Record of Proceedings. AR 00008. Defendant nevertheless suggests that the Court can

---

administrative record matter before the ABCMR. *See* Dkt. 38 at 22; 5 U.S.C. § 706; *Ergon-W. Va., Inc. v. EPA*, 980 F.3d 403, 410 (4th Cir. 2020).

consider the screenshots since the "ABCMR and the DASA-RB *indirectly* considered these text messages when reaching their decision because both referred to D'Annunzio's changed statements vis-à-vis the text messages." Dkt. 38 at 23-24 (emphasis added). However, while several text messages are referenced in the law enforcement investigative report and Plaintiff's expungement request, the screenshots provided in the latter half of the administrative record are far more comprehensive and detailed. *See* AR 00057-68 (Agent's Investigative Report); AR 00025 (Expungement Request). Accordingly, the Court will not consider the text message screenshots as part of the record in its review. *See* AR 00128-252.

Apart from the screenshots, the Court finds that the remainder of the administrative record is complete as it stands. Plaintiff argues that the "entire unredacted Army CID investigation file" must be included. Dkt. 29 at 10. However, the redactions in the record do not preclude effective judicial review here. Defendant is correct that the bulk of the redactions include names and personal information. Dkt. 38 at 23; *see e.g.*, AR 00004 (redacting address); AR 00037 (redacting birth date and place information and Social Security number); AR 00056-63 (redacting names in investigative report).[8] Plaintiff does not explain how these redactions inhibit this Court's review. Nor does the Court find that the redactions conceal any information material to the DASA-RB decision and ABCMR record of proceedings. AR 00007-22.

Moreover, the record properly includes all the documents that the ABCMR considered in its decision, as stated in the Board's Record of Proceedings. *See* AR 00008 (listing the supporting documents considered by the Board); Dkt. 27-1 (index of administrative record). The Record of

---

[8] Several of the redactions refer to (b)(6) and (b)(7), which the Court believes to be exemptions from disclosure under the Freedom of Information Act ("FOIA"). *See* AR 00056; *see* 5 U.S.C. § 552(b)(6) (exemption for disclosure of "personnel and medical files . . . the disclosure of which would constitute a clearly unwarranted invasion of personal privacy"); (b)(7) (exemption for disclosure of some "law enforcement" records or information).

Proceedings does not assert that the Board had access to any of the additional materials attached to Plaintiff's Motion, which Plaintiff contends are improperly missing from the administrative record.[9] Dkt. 29 at 5-9. Nor is there any reason to believe that the DASA-RB had access to these additional records, given his decision relied on "the evidence presented, findings, conclusions, and Board member recommendations." AR 00007. It is further notable that the records submitted to this Court, and considered by the agency in its decision-making, were produced by Plaintiff. As Defendant contends, the ABCMR does not have a duty to compile an administrative record, given it is not an investigative body. Dkt. 38 at 23; Army Reg. 15-185 ¶ 2-2(c) ("The ABCMR will decide cases on the evidence of record. It is not an investigative body."). Accordingly, Plaintiff bears the burden to demonstrate an "error or injustice" in his military records before the ABCMR. Army Reg. 15-185 ¶ 2-9 ("The ABCMR begins its consideration of each case with the presumption of administrative regularity. The applicant has the burden of proving an error or injustice by a preponderance of the evidence."). Because the administrative record before the Court appears to be a reproduction of the record Plaintiff provided to the ABCMR, any purported omissions would have fallen to Plaintiff.[10]

---

[9] These include Ms. D'Annunzio's affidavit, Stafford County police records, the two military protective orders, the Commander's decision to dismiss charges, or the verbal counseling notice Plaintiff received.

[10] Plaintiff attempts to argue that the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo* supports its argument about the administrative record. Dkt. 29 at 11 (citing 603 U.S. at 369 (2024)). Plaintiff purports that *Loper Bright* states the Court must conduct a *de novo* review of "the whole record ... [including] everything that was before the agency pertaining to the merits of its decision." *Id.* However, the quoted language does not exist in the *Loper Bright* opinion, nor does Plaintiff provide a cite for it. Furthermore, as Defendant correctly states, *Loper Bright* "says nothing about the scope of an administrative record and has no relevance to this case." Dkt. 38 at 25.

*Secretary of the Army's Authority to Overturn ABCMR Recommendation*

Next, the Court assesses whether the Secretary of the Army, by way of the DASA-RB, had authority to overturn the ABCMR's recommendation to expunge Plaintiff's records. The parties dispute whether, under Army Regulations, the Secretary of the Army is bound by the ABCMR's recommendation. While Plaintiff concedes that Congress granted the Secretary the power to correct military records under 10 U.S.C. § 1552, he contends that the DASA-RB violated Army Reg. 15-185 by overturning the ABCMR's "binding" decision. Dkt. 29 at 14-15. Conversely, relying on the text of the regulation, Defendant argues that the regulation expressly grants the Secretary discretion to reject ABCMR findings. Dkt. 42 at 2-3

Under 5 U.S.C. § 1552(a)(1), Congress grants the Secretary of a military department, such as the Secretary of the Army, the power to "correct an error or remove an injustice" from a military record by way of a civilian review board. Section 1552(a)(3) permits the Secretary to determine the procedures to make such corrections. 5 U.S.C. § 1552(a)(3). Army Reg. 15-185 sets forth the Secretary of the Army's process for records corrections, stating, "[e]xcept as otherwise provided, the ABCMR acts for the Secretary of the Army" and further authorizing the Secretary to "direct such action as he or she deems proper on each case." Army Reg. 15-185 ¶¶ 2-13(a), 2-14. Under the APA, decisions of the ABCMR, acting for the Secretary, constitute "final agency actions subject to judicial review." *Downey v. U.S. Dept. of the Army*, 110 F. Supp. 3d 676, 685-86 (E.D. Va. 2015). The Court's role in such cases is "to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* at 686. An ABCMR decision is invalid under the APA if "arbitrary, capricious, contrary to law, or unsupported by substantial evidence" or "contrary to constitutional right, power, or privilege." *Id.* (citing 5 U.S.C. §§ 706(2)(A), (B), (E)).

Plaintiff contends that because the ABCMR "unanimously agreed and recommended" expungement, the matter is final and therefore binding on the Secretary. Dkt. 41 at 3-4. However, Plaintiff's read would be inconsistent with ¶ 2-14, which further states that "[t]he Secretary of the Army may direct such action as he or she deems proper on each case." Army Reg. 15-185 ¶ 2-14(a). Under ¶ 1-5, outlining the responsibilities of the various entities, the regulation also provides that "[t]he Secretary will take final action on applications, as appropriate." Army Reg. 15-185 ¶ 1-5. Neither of these two provisions limit when the Secretary may direct action. Nor does ¶ 2-13(a), or any other portion of the regulation, define a final decision by the ABCMR as "binding" on the Secretary. Army Reg. 15-185 ¶ 2-13(a). Given the regulations and precedent consistently state that the Board acts for the Secretary, it would be illogical for the Secretary to be constrained by the actions of one of its agents. Accordingly, on the plain text of the regulation, the Court finds that the Secretary acted within his authority under Reg. 15-185 when denying the ABCMR's unanimous recommendation.[11]

### *Review of Final DASA-RB Decision*

Finally, the Court considers whether, on the administrative record, the DASA-RB's decision to reject the ABCMR's recommendation was arbitrary and capricious under the APA.[12] The relevant factors for determining whether an agency action was arbitrary or capricious include

---

[11] Defendant additionally states that the Secretary properly "delegated this power to the DASA-RB." Dkt. 38 at 23; *see also* Dkt. 42 at 3. However, Plaintiff does not dispute that the DASA-RB acted as an "authorized officer" for the Secretary. Dkt. 29 at 1. Nor does Plaintiff dispute the Secretary's authority to delegate corrections to a board. Therefore, the Court need not address this argument.

[12] Plaintiff attempts to further argue that Army CID's initial denial of Plaintiff's expungement request was also arbitrary and capricious. Dkt. 29 at 18-19. However, that decision is immaterial here, given the "final agency action" at issue is the DASA-RB's decision. *See Drenning v. Toro*, No. 1:23-cv-1438, 2024 WL 4206076, at *5 (E.D. Va. Sep. 13, 2024) (making same determination with respect to similar argument from party).

14

"whether the agency considered the relevant factors and whether a clear error of judgment was made." *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192 (4th Cir. 2009). The Court must determine whether the agency's "written opinion made a 'rational connection' between that evidence and its conclusion"; however, it cannot "substitute its judgment for that of the agency." *Bowersox v. Whitley*, No. 1:20-cv-480, 2021 WL 1439673, at *3 (E.D. Va. Mar. 15, 2021) (quoting *Downey*, 110 F. Supp. 3d at 687; and then quoting *Friends of Buckingham v. State Air Pollution Ctrl. Bd.*, 947 F.3d 68, 80 (4th Cir. 2020)).

Decisions by military correction boards are granted "unusually deferential application of the arbitrary or capricious standard of the APA." *Shurland v. Air Force Bd. for Corr. of Mil. Recs.*, No. 3:17-cv-770, 2019 WL 5410064, at *2 (E.D. Va. Sep. 24, 2019) (citing *Downey*, 110 F. Supp. 3d at 686). Such deference prevents courts from becoming "super correction board[s]" and issuing "a result that would destabilize military command and take the judiciary far afield of its area of competence." *Downey*, 110 F. Supp. 3d at 686-87 (citing *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000)). The decision will be upheld if it is supported by "substantial evidence," or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Platone v. U.S. Dep't of Lab.*, 548 F.3d 322, 326 (4th Cir. 2008).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* at 103 (quoting *Consol. Edison Co.*, 305 U.S. at 229). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229).

The DASA-RB's decision states:

> I have reviewed the evidence presented, findings, conclusions, and Board member recommendations. Based upon the justification provided for the board's recommendation (recanted statement) and the evidence showing the recanted statements relate to a single offense, when the applicant had multiple offenses for the same misconduct, I find probable cause still exists that the applicant was involved in the misconduct leading to his titling. The application submitted by the individual concerned is denied.

AR 00007. Because the decision provides an explanation supported by the record, and given the broad discretion granted to military decisions, the Court will uphold the DASA-RB's determination.

Under DoDI 5505.07 § 3.2(a), an official reviewing an expungement request will consider whether probable cause existed to determine the occurrence of the offense, whether probable cause existed to demonstrate the person *committed* the offense, and any "other circumstances . . . in the interest of justice." DoDI 5505.07 § 3.2(a). Probable cause "exists where the facts and circumstances within the officer's knowledge, and of which he or she has reasonably trustworthy information, are sufficient in themselves to warrant a belief by a person of reasonable caution that a crime is being committed or has been committed." DoDI 5505.11 § G.2 (Oct. 31, 2019); *see also* DoDI 5505.07 § G.2 (cross referencing to DoDI 5505.11 § G.2).

Plaintiff makes several point-by-point challenges to the DASA-RB's decision. The Court addresses each one. First, Plaintiff errs in stating that the DASA-RB improperly applied the requirements for expungement because a "probable cause" finding is a "legal conclusion" for a "judicial officer." Dkt. 29 at 19. Plaintiff cites no authority for this, nor does the DoD's internal guidance support such a reading. The DoDI permits the DoD Component to designate "expungement officials" to review requests but does not use the term "judicial officer" anywhere. DoDI 5505.07 § 2.4. Second, while Plaintiff repeatedly claims the DASA-RB inserted his personal

opinion because "he believed that [Plaintiff] did it at some point and he's a bad person," the DASA-RB's stated reason makes no such assertion.[13] Dkt. 29 at 20; *see* Dkt. 38 at 26 (noting Plaintiff did not "identify a single component of the DASA-RB's statement which identifies Plaintiff as a bad person [or] espouses a personal viewpoint"); *see also Dep't of Com. v. New York*, 588 U.S. 752, 780-81 (2019) (holding any "judicial inquiry into 'executive motivation' would be a "substantial intrusion" into the Executive Branch).

Third, substantial evidence supports a finding of probable cause. For one, the DASA-RB's decision expressly relies on facts and evidence in the record. *See* DoDI 5505.11 § G.2 (stating probable cause "exists where the facts and circumstances within the officer's knowledge, and of which he or she has reasonably trustworthy information, are sufficient in themselves to warrant a belief by a person of reasonable caution that a crime is being committed or has been committed").

Here, the DASA-RB noted that the ABCMR's justification had been based on recanted statements. AR 00007. Even with the recantation, the DASA-RB found that probable cause still existed because (1) the recanted statements only related to a single offense, and (2) there were the multiple offenses "for the same misconduct" in Plaintiff's records. *Id.* Additionally, the DASA-RB indicated that in making the decision, he had reviewed the evidence presented, findings, conclusions, and Board member recommendations. *Id.;* AR 00114-16 (stating Article 32 findings of prior assault and battery charges based on police reports). Therefore, the Court rejects Plaintiff's argument that "the facts on which" the DASA-RB decided and "expressed in his limited reasoning

---

[13] Nor should the Court accept Defendant's post hoc rationalization that the DASA-RB's decision was motivated by the "complicated dynamics behind an alleged victim's decision to recant." Dkt. 38 at 22; *see Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*, 707 F.3d 462, 467-68 (4th Cir. 2013) (stating a "court may look only to these contemporaneous justifications in reviewing the agency action" rather than "*post hoc* rationalizations") (quoting *Motor Vehicle Mfr. Ass'n v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)).

17

were not clear." Dkt. 41 at 2; *see also Downey*, 110 F. Supp. 3d at 689 ("In fact, '[e]ven when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned.") (quoting *Nat'l Elec. Mfrs. Ass'n v. U.S. Dep't of Energy*, 654 F.3d 496, 514–15 (4th Cir. 2011)). Taken as a whole, substantial evidence supported the DASA-RB's determination of probable cause.

While Ms. D'Annunzio's recantations, which formed the basis of the ABCMR decision, pertain to the 2018 and 2019 Incidents, the Court agrees that the record shows that Plaintiff had been investigated for other related charges in the past. AR 00017, 00114-16. The Court also rejects Plaintiff's claim that the DASA-RB's reliance on uncharged offenses from the 2018 and 2019 Incidents was an "abuse of discretion." Dkt. 41 at 5. Section 3.2(b) of DoDI 5505.07 permits expungement officials to consider "[w]hether adverse administrative, disciplinary, judicial, or other such action was initiated against the covered person for the offense," and "[t]he type, nature, and outcome" of those actions. Accordingly, the DASA-RB acted within its regulatory authority in considering uncharged offenses. Collectively, based on the DASA-RB's stated rationale and the underlying support for that rationale in the record, a reasonable mind could accept that probable cause exists that "a crime is being committed or has been committed." *See* DoDI 5505.11 § G.2 (Oct. 31, 2019).

Considering the agency's reasoned decision-making, the Court defers to the DASA-RB's decision, as is typical for military decisions. *See Downey*, 110 F. Supp. 3d at 686; *see also Dorado-Ocasio v. Averill*, 128 F.4th 513, 522 (4th Cir. 2025) (discussing the need for judicial deference to prevent intrusion into military affairs and strategy and "preserve respect for the chain of command"). Plaintiff has not shown that the DASA-RB's decision is "most egregious" and

18

warrants no deference. Dkt. 41 at 7.[14]  Failure to defer here "would render the Secretary of the Army's discretion effectively meaningless." *Dorado-Ocasio*, 128 F.4th at 520 (reviewing an ABCMR decision).

Accordingly, for the reasons stated, the Court grants summary judgment in favor of Defendant as to the APA claim.

## II.    Motion to Dismiss the Privacy Act Claim

Defendant separately moves this Court to dismiss Plaintiff's Privacy Act claim under the statutory two-year limitations period. Dkt. 38 at 28; 5 U.S.C. § 552a(g)(5) ("An action to enforce any liability created under this section may be brought in the district court of the United States. . . within two years from the date on which the cause of action arises."). Plaintiff, however, contends that the statute of limitations began to run after the DASA-RB issued its final agency action and Plaintiff exhausted his administrative remedies, both of which occurred approximately three months before Plaintiff filed suit. Dkt. 41 at 9. In response, Defendant asserts that Plaintiff's administrative exhaustion argument seeks to impermissibly amend the complaint through briefing. Dkt. 42 at 8. Further, per Defendant, "Plaintiff cites to no statute or regulation" requiring exhaustion. *Id.* at 8-9. The Court agrees and will accordingly dismiss the Privacy Act claim.

Under the Privacy Act, the statute of limitations for bringing a valid cause of action is two years from when the action accrued. 5 U.S.C. § 552a(g)(5). A claim accrues when "the person knows or has reason to know of the alleged violation." *Doe v. Nat'l Sec. Agency*, 1998 WL 743665, at *1 (4th Cir. 1998) (quoting *Rose v. United States*, 905 F.2d 1257, 1259 (9th Cir. 1990)).

---

[14] Plaintiff again attempts to argue that the Supreme Court's decision in *Loper Bright* supports a novel *de novo* standard for this Court in this matter. Dkt. 29 at 11 (citing 603 U.S. at 369). However, as Plaintiff concedes, *Loper Bright* concerned deference to agencies' interpretation of *statutes*. *Id.* at 23. No statutory interpretation is at issue here.

19

"The failure to comply with the limitations period deprives the court of subject matter jurisdiction." *Id.*

The Amended Complaint alleges that "[o]n or before June 9, 2020, one or more of Defendant's officers, employees, or agents . . . provided personal details and facts of the case from one or more of Defendant's systems of records" to the media. Am. Compl. ¶ 72. On June 11, 2020, the *Army Times* allegedly "reported in extraordinary detail" the allegations against Plaintiff. *Id.* ¶ 73. At the very least, Plaintiff knew or had reason to know of the alleged violations on June 11, 2020, when the *Army Times* allegedly published his personal details. However, Plaintiff did not bring a Privacy Act claim against Defendant until June 25, 2024, more than four years after the claim accrued. Dkt. 7.[15] Accordingly, Plaintiff's Privacy Act claim is time-barred.

To the extent Plaintiff contends that he was first required to exhaust his administrative remedies, Defendant correctly asserts that Plaintiff "cites to no statute or regulation that requires him to exhaust his Privacy Act claim before the ABCMR." Dkt. 42 at 8-9.[16] Furthermore, Plaintiff does not state any facts in the Amended Complaint that point to his administrative exhaustion, nor does the record show that Plaintiff raised the Privacy Act claim before the ABCMR. *Id.* at 8; AR 00025-33. *See generally* Am. Compl.

As to Defendant's argument that Plaintiff is not entitled to equitable tolling, Plaintiff conceded that argument by failing to respond. Dkt. 38 at 29-30; *see Borromeo v. Mayorkas*, No.

---

[15] As Defendant notes, Plaintiff's original Complaint on April 2, 2024 did not include a Privacy Act claim. Dkt. 38 at 29, n. 7 (citing Dkt. 1). Even if the Privacy Act claim related back to that filing date, it would still be time-barred. *Id.*

[16] It is further noted that the statutory language does not require exhaustion. While Plaintiff argues exhaustion is required under Army Reg. 15-80, that regulation pertains to grade determinations and does not apply to the Privacy Act claim. Dkt. 41 at 9; Army Reg. 15-80 (governing Army Grade Determination Review Board).

1:22-cv-00289, 2023 WL 2249966, at *5 (E.D. Va. Feb. 27, 2023) ("A party's failure to respond to an argument made in a motion to dismiss constitutes a concession of that argument."). Therefore, the Court grants Defendant's Motion to Dismiss the Privacy Act claim.

**Conclusion**

For the reasons stated above, Defendant's Motion for Summary Judgment and Motion to Dismiss are granted, and Plaintiff's Motion for Summary Judgment is denied.

A separate order will issue.

Entered this 29th day of September, 2025.
Alexandria, Virginia

Patricia Tolliver Giles
United States District Judge